# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**LANAY N. KAPPERUD and CATHY J. KAPPERUD,**<br><br>Debtors. | Case No. **2:19-bk-60946-BPH** |

## MEMORANDUM OF DECISION

### INTRODUCTION

In this chapter 12[1] bankruptcy case, the Trustee filed a "Motion for Order Regarding Debtors' Attorneys' Fees."[2] Fundamentally, the Motion seeks a court order compelling counsel for Lanay N. Kapperud and Cathy J. Kapperud ("Debtors") to file an application for compensation for the work done by counsel on Debtors' behalf post-confirmation. In turn, Debtors filed an Objection to the Motion.[3] Debtors argue that upon confirmation of their chapter 12 Plan, all property of the estate revested in Debtors, eliminating the need to seek court approval of post-confirmation attorneys' fees.

The genesis of this dispute arises, in part, from an order issued by this Court in a different case.[4] In *Olson*, the Court denied approval of an employment application in a chapter 12 case filed nearly two years after confirmation of the debtor's chapter 12 plan, where the debtor sought to employ the services of criminal defense counsel. In that order, this Court reasoned that employment under § 327 was a prerequisite to approval and payment of counsel's fees by the estate. Since property revested in the debtor at confirmation, there remained no estate from which to pay professionals and the application to employ was denied.[5] In essence, the Court was

---

[1] Unless otherwise indicated, all chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–88.

[2] See ECF Nos. 220 and 221 ("Motion") and ECF No. 232 ("Trustee's Supplemental Brief").

[3] ECF Nos. 224 ("Objection") and 233 ("Debtors' Supplemental Brief")

[4] *See In re Hunter Anton Olson*, Case No. 2:19-bk-60465-BPH, ECF Nos. 257 and 268 (Bankr. D. Mont. 2019).

[5] See, e.g., *In re Thorpe*, 563 B.R. 576, 598 (Bankr. E.D. Pa. 2017) (holding that where estate property revested in a debtor upon confirmation, "the Debtor was free to retain any attorney she chose to represent her" without any oversight from the bankruptcy court in a post-confirmation legal action against her insurer). Unlike *Thorpe*, the issues involved in this case pertain to post-confirmation services directly related to Debtors' confirmed Plan, rather than services performed for matters unrelated to bankruptcy.

1

unwilling to approve employment of the debtor's criminal defense counsel under § 327, almost 2 years after the plan was confirmed.[6]

In arguing that the estate termination approach adopted by the Ninth Circuit severs counsel's need for court approval under § 330 for post-confirmation fees, Debtors urge this Court to construe the confirmed plan in a manner that makes application for approval of professional fees post-confirmation discretionary, rather than mandatory. In this case, Debtors' confirmed Plan contemplates compensation for counsels' fees as an administrative expense. This is in line with the long-standing practice in this district that counsel must seek approval from this Court for such fees post-confirmation. Indeed, this practice is reflected in Mont. LBR 2016-1(a), which states, in part, "[n]o compensation or reimbursement of expenses shall be paid a professional, including from a retainer, until allowed by order of the Court under this Rule" and Mont. LBR 2016-1(c) which further states "Fees in excess of the retainer held by an attorney for a chapter 12 or 13 debtor must be paid through the chapter 12 or 13 plan as an administrative expense pursuant to 11 U.S.C. § 503(b)(2)."

While Debtors' argument highlights some of the administrative challenges associated with the estate termination theory, the applicable local rules – specifically, Mont. LBR 2016-1 – obligate debtor's counsel to apply and seek approval of its fees as a condition of payment, without regard to whether the fees were incurred prior to or after confirmation in a chapter 12 case.

## STATEMENT OF FACTS

Debtors commenced this chapter 12 bankruptcy proceeding by filing a voluntary petition on September 18, 2019. The same day, Debtors filed an "Application to Approve Employment of Professionals; and Affidavit" ("Application to Employ").[7] The Application to Employ sought the employment of James A. Patten, Molly S. Considine, and Patten, Peterman, Bekkedahl & Green, PLLC (collectively, "Debtors' Counsel") to represent Debtors in this bankruptcy. The Court approved the Application to Employ on October 10, 2019 ("Employment Order").[8]

The Employment Order provided, in part, that "all fees paid to said professionals are subject to the approval of this Court upon the filing of a proper application for reasonable professional fees and reimbursement for actual, necessary expenses in accordance with Mont. LBR 2016-1." In addition, the Employment Order specified that the reasonableness of any fee request will be determined pursuant to the standards set forth in § 330.

---

[6] *Olson*, Case No. 2:19-bk-60465-BPH, ECF No. 268.

[7] ECF No. 9.

[8] ECF No. 29.

The Court confirmed Debtors' chapter 12 Plan in February 2020 ("Plan").[9] The Plan provided:

> The future earnings and projected disposable income of the Debtor is submitted to the supervision and control of the Court, and the Debtor shall pay to the Trustee . . . such additional amounts as necessary for additional professional fees and costs, including Trustee fees and costs, allowed by the Court.[10]

The Plan also stated that:

> [e]xcept as provided in this plan or in the order confirming this plan, upon confirmation of this plan all of the property of the estate shall vest in the Debtor free and clear of any claim or interest of any creditor provided for by this plan, pursuant to 11 U.S.C. § 1227.[11]

Following confirmation of Debtors' Plan and consistent with the Employment Order, Debtors' Counsel filed a "First Interim Application for Professional Fees and Costs" ("Interim Fee Application").[12] The time records included with the Interim Fee Application begin on the petition date, and the last time entry was June 11, 2020, approximately four months after confirmation of the Plan. The Court approved the Interim Fee Application ("Interim Fee Order") and awarded Debtors' Counsel $30,874.00 in reasonable professional fees and $2,140.19 in costs and expenses.[13] The Court explained in the Interim Fee Order that "[f]inal approval of this and any future award shall await the filing of Applicants' final application for professional compensation."[14]

Approximately four months later, Debtors moved to modify their Plan pursuant to § 1229 ("Modified Plan").[15] The Plan's language regarding the manner in which professionals are to be

---

[9] ECF No. 95.

[10] *Id.* at ¶ 1.

[11] *Id.* at ¶ 8.

[12] ECF No. 131.

[13] ECF No. 136.

[14] *Id.*

[15] ECF No. 159.

3

paid, as outlined above, remained unchanged by the Modified Plan. The Court approved the Modified Plan.[16] The Modified Plan remains the operative Plan in this case.[17]

Following approval of the Modified Plan, the Trustee filed the present Motion. Debtors' Objection explains that they have not filed any further applications for professional fees and costs following their Interim Fee Application.[18] Additionally, Debtors have made payments directly to their attorneys' post-confirmation for fees incurred.[19]

## DISCUSSION & ANALYSIS

Debtors argue that following confirmation of a chapter 12 plan of reorganization, counsel may receive compensation in one of two ways. First, counsel may apply for approval of fees pursuant to § 330(a)(4)(B), and any fee award will be treated as an administrative expense under § 503(b)(2). These awards are entitled to priority payment per § 507(a)(2), provided such treatment is consistent with the confirmed plan. Alternatively, a debtor may pay counsel directly without approval by the court. Under the latter option, Debtors explain that counsel sacrifice any administrative expense priority they may be entitled to under § 503(b)(2) and § 507(a)(2) and potentially jeopardize their ability to collect any unpaid fees upon the entry of a final decree. Debtors' argument raises intriguing questions regarding the limits of an estate termination approach, and the role of the Court post-confirmation. However, in doing so, Debtors gloss over applicable local rules when construing their Modified Plan. This oversight is fatal to Debtors' argument. Consideration of employment and compensation generally, before considering Debtors' specific argument, proves useful to the analysis.

### I. Prior to confirmation, §§ 327 and 330(a)(1) and Rules 2014 and 2016 require professionals to seek court approval for employment and compensation in a chapter 12 case.

The Code provides clear guidance as to how professionals working on behalf of the estate may be paid. This guidance is not merely suggestive: "[c]ourt approval of the employment of counsel for a debtor in possession is *sine qua non* to counsel getting paid. Failure to receive court approval for the employment of a professional in accordance with § 327 and Rule 2014 precludes the payment of fees." *DeRonde v. Shirley (In re Shirley)*, 134 B.R. 940, 943 (B.A.P. 9th Cir. 1991). Accordingly, in a chapter 12 case, counsel for debtors in possession must be employed by the Court through the process detailed below as a condition of payment.

#### a. Upon the filing of a chapter 12 bankruptcy petition, the estate is created, and a debtor becomes a debtor in possession.

---

[16] ECF No. 165.

[17] ECF No. 159.

[18] Debtors' Supplemental Brief at p. 3, ¶ 7.

[19] *Id.* at ¶ 8.

4

When a debtor files a bankruptcy petition, an estate is created that comprises the debtors' legal and equitable interests in property, subject to certain exemptions. *HSBC Bank USA, N.A. v. Blendheim (In re Blendheim)*, 803 F.3d 477, 484 (9th Cir. 2015); § 541(a)(1). Estate property in a chapter 12 also includes:

> (1) all property of the kind specified in [§ 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 of this title, whichever occurs first; and
>
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 of this title, whichever occurs first.

§ 1207(a).

Further, when a chapter 12 petition is filed, the "debtor automatically becomes a debtor in possession." 3 Collier on Bankruptcy, ¶ 1203.01 (16th ed. 2023); § 1203. As this Court has previously stated, "debtor" and "debtor in possession" are not the same term. *In re Mullendore*, 517 B.R. 232, 238 (Bankr. D. Mont. 2014) (clarifying the distinction in the context of a chapter 11). Debtor is a "person or municipality concerning which a case under this title has been commenced." § 101(13). Conversely, § 1203 provides that "a debtor in possession shall have all the rights . . . and powers and shall perform all the functions and duties. . . of a trustee serving in a case under chapter 11. . ." In other words, unlike a debtor, a chapter 12 debtor in possession plays an active role in the administration of the bankruptcy estate through the utilization of his trustee powers similar to those in a chapter 11 bankruptcy. These powers include the employment of professionals to assist the debtor in possession in performance of his duties administering the estate and its property. § 327(a). As such, a debtor in possession has a fiduciary obligation to all creditors of the bankruptcy estate, not to the individual principals of the pre-bankruptcy debtor. *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 614 (9th Cir. 1988) (in the context of a chapter 11).

Here, Debtors filed a chapter 12 petition. Upon doing so, all of their legal and equitable interests became property of the bankruptcy estate. Debtors additionally became debtors in possession. Acting with the powers of a trustee, they employed the services of Debtors' Counsel on behalf of the estate.

### b. Professionals working on behalf of the estate are employed pursuant to § 327.

Section 327 governs the employment of professional persons acting on behalf of the estate in a bankruptcy proceeding. Section 327(a) provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate,

5

and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Notably, § 327(a) makes specific reference to "trustee." Based on the plain text, § 327 does not apply to the retention of professionals by a debtor that is not a debtor in possession.[20] This distinction is crucial. As the 9th Circuit B.A.P. explains:

> Section 327 states that the trustee, with court approval, may employ one or more attorneys or other professional persons. The professional can be employed only if it does not hold an interest adverse to the estate and it is disinterested. The professional is employed to act on behalf of the bankruptcy estate, not the debtor or any creditor.
>
> When the debtor is a debtor in possession, it essentially steps into the shoes of the trustee and has control over the bankruptcy estate. The professional, employed now by the debtor in possession, is still expected to act only in the best interests of the estate. Therefore, court approval of its employment is necessary. If the debtor is not in possession, these same concerns do not come into play. Counsel for the debtor then, to the extent it gets involved in the case, represents the debtor and not the estate or the creditors. Therefore, court approval of employment is not necessary.

*McCutcheon, Doyle, Brown & Enerson v. Official Comm. of Unsecured Creditors (In re Weibel, Inc.)* 176 B.R. 209, 212 (B.A.P. 9th Cir. 1994).

Before the Court may approve the employment of a professional under § 327, an applicant must file an application pursuant to Rule 2014(a). As a prerequisite to compensation under § 330, a professional's employment by the debtor in possession on behalf of the estate must be approved by the Court under § 327. Here, the Debtors in possession, timely filed the Application to Employ Debtors' Counsel on behalf of the estate pursuant to Rule 2014(a) and § 327.[21] The Court approved the Application to Employ in its Employment Order.[22]

   c. **Debtors' Counsel applied for, and received compensation, pursuant to § 330.**

Section 330 of the Code provides the statutory authority for compensation and reimbursement for expenses to professionals for work on behalf of the estate. Pursuant to § 330(a)(1):

---

[20] As such, "court approval is not necessary for the appointment of an attorney for the debtor in a liquidation case under chapter 7, an attorney for the debtor in a chapter 13 case or an attorney for the debtor out of possession in a chapter 11 case." 3 Collier on Bankruptcy, ¶ 327.05[3] (16th ed. 2023).

[21] ECF No. 9.

[22] ECF No. 29.

> After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a . . . professional person employed under section 327 or 1103 –
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

Under § 503(b)(2), compensation awarded under § 330(a)(1) is awarded administrative priority. These claims are junior in priority to domestic support obligations but senior to other priority claims. § 507(a)(2). A chapter 12 plan must provide that all § 507 claims be paid in full. § 1222(a)(2). Finally, counsel must be employed pursuant to § 327 in order to be paid from the estate under § 330(a)(1). *Lamie v. United States Tr.*, 540 U.S. 526, 539 (2004).

As previously explained, in order to receive compensation for services and reimbursement of expenses, Rule 2016 requires that an application be submitted by counsel for court review. Rule 2016(a) provides:

> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.

Here, prior to confirmation in this case, Debtors' Counsel estimated fees and costs that, pursuant to § 503(b)(2), would be awarded administrative priority under § 507(a)(2) and entitled to full payment under Debtors' Plan as required by § 1222(a)(2).[23] Debtors' Counsel subsequently submitted to the Court the Interim Fee Application in accordance with § 330 and Rule 2016. The Court approved the Interim Fee Application in its Interim Fee Order and awarded Debtors' Counsel $30,874.00 in reasonable professional fees and $2,140.19 in costs and expenses for work done both pre- and post- confirmation. Notably, the Interim Fee Order states that the interim fee awarded to Debtors' Counsel, and any future award, are subject to the Court's approval of a final fee application, which has not yet been filed.

Prior to confirmation, Rule 2016 and §§ 327 and 330(a)(1) provide the framework under which professionals may seek compensation. As such, the Code requires Debtors' Counsel to take these affirmative steps to receive fees and reimbursement of costs associated with their services. The question remains, however, whether counsel must continue to submit a fee application for this Court's review post-confirmation or if such an approach is merely discretionary as argued by Debtors. In this district, the process for approval of post-confirmation fees incurred by an attorney for the debtor in a chapter 12 case mirrors the pre-confirmation fee approval procedure.

---

[23] Debtors' Supplemental Brief, p. 6. ("The Kapperuds contemplated those fees would be entitled to administrative priority pursuant to 11 U.S.C. § 507(a)(2) as reflected in paragraph c(i) of the Plan.").

7

## II. Post-confirmation, § 330(a)(4)(B), the local rules mandate debtor's counsel in a chapter 12 case must apply for fees and costs.

Debtors and the Trustee's view diverge when it comes to the necessity of applying for fees post-confirmation. Their dispute hinges on interpretation of the Modified Plan. The Trustee argues that the Employment Order, the Interim Fee Order and the confirmed Plan (and the subsequently Modified Plan) require Debtors' Counsel to apply to this Court for professional fees. Debtors' Counsel argues that the language of the Plan, particularly when viewing it through the lens of estate termination, is permissive. In a vacuum, Debtors' argument has a certain logic to it. If the estate terminates following confirmation, no estate exists from which to either award or pay compensation to professionals. Instead, according to Debtors, following termination of the estate, professionals are employed by and assisting the debtor, and the debtor may exercise their discretion when electing how to pay professionals.

Debtors argue that their liability for professional services post-confirmation, following termination of the estate,[24] may be paid in two different ways. First, Debtors argue that compensation and reimbursement of expenses may be applied for and awarded under § 330(a)(4)(B) and qualify for administrative expense treatment. §§ 503(b)(2); § 507(a)(2). Accordingly, since Debtors' confirmed Plan allows them to do so, Debtors' Counsel may seek and receive administrative expense priority for their fees and expenses with this Court's approval.

Alternatively, Debtors argue that nothing in the Code mandates an application under § 330(a)(4)(B). Instead, they may elect to forego the administrative expense priority treatment provided under the Code and receive payment directly from Debtors. Such an approach is consistent with the widely held view that once the estate terminates, "the debtor is free to go about its business without further supervision or approval of the court, and concomitantly, without further protection of the court." *Sw. Marine, Inc. v. Danzig*, 217 F.3d 1128, 1140 (9th Cir. 2000). Under this theory, Debtors argue that if counsel does not apply for court approval of fees, they will not receive an award, and the compensation earned will not qualify as an allowed administrative expense claim entitled to priority status.

---

[24] Under the estate termination theory, the vesting of all estate property in the reorganized debtor at confirmation (unless the plan or confirmation order provides otherwise) terminates the estate. *In re Jones*, 420 B.R. 506, 515 (B.A.P. 9th Cir. 2009) *aff'd* 657 F.2d 921 (9th Cir. 2011). Notably, the B.A.P. has questioned whether the Ninth Circuit has actually embraced the estate termination approach. *Rushmore Loan Mgmt. Servs., LLC v. Moon (In re Moon),* 2021 Bankr. Lexis 28, at *10, n. 10 (B.A.P. 9th Cir. 2021). In *Moon*, the B.A.P. posited that the Circuit Panel instead adopted the "estate transformation" approach in its *Jones* holding, which dictates that "only property needed to fund the plan remains estate property upon confirmation; all other property revests in the debtor." *Id.* However, the B.A.P. declined to definitively decide the issue. Given the observation's relegation to a footnote in an unreported decision, the Court is reluctant to ignore the unequivocal estate termination approach previously endorsed by the B.A.P.

Ordinarily absent an agreement with claimant otherwise, § 1222(a)(2) requires a chapter 12 plan provide for the full payment of all claims entitled to priority under § 507. Under Debtors' argument counsel may agree to different treatment and forego priority treatment under a plan, rendering § 507 and § 1222(a)(2), inapplicable. In essence, Debtors' Counsel would receive payment outside the Plan. Further, since property of the estate reverted to Debtors, the estate terminated, and Debtors are free to utilize their property as they wish without further intervention of the Court so long as their Plan is adequately funded, and Plan payments are timely.[25] In short, Debtors contend counsel can receive payment through a confirmed plan under § 330(a)(4)(B) or consent to different treatment and receive direct payments from Debtors. As such, they may (but are not obligated to) seek approval and an award of compensation for those services provided following confirmation.

Although cogent, Debtors' argument overlooks applicable local rules. The Court need not determine whether the Trustee's or Debtors' interpretation of specific Plan language is correct. Instead, the local rules in the District of Montana require that the Court approve professional fees and expenses post-confirmation as condition of payment, conforming with long-standing customs and practice.

### a. Ordinarily, counsel for reorganized chapter 12 debtors apply for and receive compensation post-confirmation pursuant to § 330(a)(4)(B).

When all property of the estate revests with debtor upon confirmation, the debtor-in-possession and the estate cease to exist. § 1227(b); *see also In re Mullendore*, 517 B.R. at 238 (a debtor-in-possession becomes reorganized debtor upon confirmation in the context of a chapter 11). This in turn severs the ability of chapter 12 counsel to apply for fees pursuant to § 330(a)(1)(A) & (B) as they are no longer employed on behalf of the estate by the debtor-in-possession under § 327. Further, payment from the estate pursuant to § 330(a)(1) is impossible as the estate no longer exists.

The Code recognizes fees paid by the estate are distinct from fees that a debtor may incur for services during the case or post-confirmation. The Code explicitly provides for payment of professional compensation incurred by debtors in chapter 12 cases:

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

§ 330(a)(4)(B). Following confirmation, debtors regularly rely on their counsel to propose modifications to chapter 12 plans. These professional services enable the debtor to continue with the case. These expenses are entitled to administrative expense priority pursuant to § 503(b)(2) and § 507(a)(2). Such administrative expenses are entitled to full payment under a confirmed chapter 12 plan. § 1222(a)(2).

---

[25] Implicit in the estate termination approach is the recognition that non-estate property may be used to fund a plan. *In re Berkley*, 613 B.R. 547, 553 (B.A.P. 9th Cir. 2020).

9

Consistent with § 1222(a)(2), Debtors' confirmed Plan and subsequently Modified Plan provided for the payment of professional fees and administrative expenses. Nothing in the Plan or Modified Plan suggests that Debtors' attorneys contemplated being paid outside the plan. An order confirming a bankruptcy plan is "binding on all parties and all questions that could have been raised pertaining to the plan are entitled to res judicata effect." *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995). The power of confirmation is such that a confirmed plan is binding, even if its terms are contrary to the Code. *Wolff v. Johnson (In re Johnson)*, 344 B.R. 104, 107 (B.A.P. 9th Cir. 2006). Debtors are bound by – and continue to operate under – the Modified Plan.

Application, approval and payment of professional fees incurred post-confirmation by a debtor's attorney in connection with the administration of the case and completion of payments required under the plan reflects the accepted procedural approach for obtaining post-confirmation fees in this district. The question remains, however, whether this method is mandatory or merely permissive as Debtors suggest.

### b. Application under § 330(a)(4)(B) for payment of post-confirmation fees is mandatory under Mont. LBR 2016-1.

Pursuant to Rule 9029, "[e]ach district court . . . may make and amend rules governing practice and procedure in all cases and proceedings within the district court's bankruptcy jurisdiction which are consistent with—but not duplicative of—Acts of Congress and these rules . . ." As such, local rules promulgated under Rule 9029:

> have the force of law to the extent that they do not conflict with higher authority. Because they are designed to ensure the efficient and expedient execution of justice, they invariably affect litigant's claims and rights . . . As long as the act is not in derogation of the clear directives of the Bankruptcy Code or Rules, judges have discretion to set parameters and issue orders for the dispensation of justice and equity.

*Sears Roebuck & Co. v. Spivey*, 265 B.R. 357, 372–73 (E.D.N.Y. 2001). Local rules "have the 'force of law' and are binding upon the parties and upon the court . . ." *Prof'l Programs Grp. v. Dep't of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994). Further, "judges must adhere to their court's local rules . . ." *Alliance of Nonprofits for Ins., Risk Retention Group v. Kipper*, 712 F.3d 1316, 1327 (9th Cir. 2013). A court is given broad discretion in interpreting its own local rules. *Miranda v. Southern Pac. Transp. Co.,* 710 F.2d 516, 521 (9th Cir. 1983). Although afforded broad discretion, Debtors' interpretation of their Modified Plan and accompanying conclusion that application and approval of fees incurred post-confirmation is discretionary cannot be reconciled with Mont. LBR 2016-1.

Transparency is an integral part of the Rules – and the Code itself. *See In re NTI-NV, Inc.*, 2023 Bankr. LEXIS 1575, *13 (B.A.P. 9th Cir. 2023) ("A paramount requirement of bankruptcy . . . is disclosure and transparency."). As a result, full disclosure of payment by debtors to their counsel is crucial to the bankruptcy process. Congress cautioned as such when it

10

drafted the Code, stating, "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." S.Rep.No. 95-989, 95th Cong. 2d Sess. 39 (1978). In this district, transparency is furthered by the adoption of longstanding Mont. Local Bankruptcy Rule ("LBR") 2016-1[26] which expressly provides for the continued supervision by this Court of fees incurred by debtor's counsel arising both pre- and post- confirmation.[27]

Mont. LBR 2016-1 governs the compensation of professionals in a bankruptcy case, with two subsections playing a critical role in this matter. First, Mont. LBR 2016-1(a) states, in part, "No compensation or reimbursement of expenses shall be paid a professional, including from a retainer, until allowed by order of the Court under this Rule." Second, Mont. LBR 2016-1(c) further outlines payment requirements of debtor's counsel in a chapter 12 case:

> [u]nless otherwise approved by the Court, authorization for any professional to receive post-petition payments from the debtor, or from any other sources for the benefit of the debtor, must be sought by written application on proper notice and shall be granted only upon a demonstration of reasonableness and necessity . . . <u>Fees in excess of the retainer held by an attorney for a Chapter 12 or 13 debtor must be paid through the Chapter 12 or 13 plan as an administrative expense pursuant to 11 U.S.C. § 503(b)(2)</u> (emphasis added).

These rules provide no temporal distinction between pre- and post-confirmation fees incurred by a chapter 12 debtor's counsel. Instead, all fees in excess of a retainer must be paid through the plan as an administrative expense. Nothing in these rules is equivocal.

Mont. LBR 2016-1(a) and (c) are consistent with long standing local practice and custom. This district is not unique in that regard. In *Hanson*, an attorney "pursued collection of postconfirmation fees directly from his debtor clients even though he never sought approval of such fees from the court and even though the chapter 13 plan provided for payment of postconfirmation fees." *In re Johnson*, 344 B.R. at 107 (citing *In re Hanson,* 223 B.R. 775 (Bankr. D. Ore. 1998)).) In sustaining the objections to the attorney's post-confirmation fees, the Oregon Bankruptcy Court explained:

---

[26] Mont. LBR 2016-1 has existed in some form since at least 2001.

[27] Similarly, other courts have concluded that bankruptcy courts maintain broad power over the review of compensation to a debtor's attorney. As the Louisiana Bankruptcy Court in *In re Talley* stated:

> It is clear that the Bankruptcy Code, the Bankruptcy Rules and relevant case-law jurisprudence conferring broad powers over fees of debtors' attorneys regardless of the source of payment, are intended for protection of the debtors and all other participants in the bankruptcy process. A confirmed Chapter 11 plan is no excuse for solicitation of the payment of unauthorized fees.

97 B.R. 312, 315 (Bankr. W.D. La. 1989).

11

> [i]n this district, expenses of administration [503(b)(2) and 507(a)(1)] . . . have long been understood to include debtor's attorney fees throughout the case, including through the discharge. Consistent with sections 330 and 503(b)(2), this district's local rules and forms at all pertinent times have made express provision for supplemental fee applications . . .

223 B.R. 775 at 778. Like the court in *Hanson*, this Court routinely scrutinizes applications by debtor's attorneys of post-confirmation fees and expenses for reasonableness, consistent with the express provisions of its local rules.

This Court is not persuaded that it should adopt an interpretation of Debtors' Modified Plan that is inconsistent with its existing local rules. Mont. LBR 2016-1(c) specifically refers to chapter 12 debtor's attorneys and dictates fees shall be applied for, paid through the plan and treated as an administrative expense. As a result, application and approval of Debtors' Counsel's fees as a condition of payment is mandatory, not discretionary. Therefore, Debtors' Counsel's fees "must be paid through the Chapter 12 or 13 plan as an administrative expense" and "no compensation or reimbursement of expenses shall be paid a professional, including from a retainer, until allowed by order of the Court under this Rule."[28] Debtors' attorneys in a chapter 12 (or 13) case must continue to seek this Court's approval for compensation and expenses post-confirmation pursuant to Mont. LBR 2016-1(c).[29]

## CONCLUSION

Debtors' briefing raises significant questions as to the administrative role of the Court in a post-confirmation chapter 12 case under the estate termination approach.[30] In the absence of a local rule requiring otherwise, the Code and the estate termination theory may very well permit the drafting of an explicit plan provision that provides for payment of professional compensation to debtor's counsel "outside the plan" and without this Court's approval post-confirmation.

---

[28] The language in Mont. LBR 2016-1(c) does not distinguish between chapter 12 and 13 cases. Accordingly, the reasoning in this Order applies equally to a chapter 13 case and counsel for debtors must submit an application for fees and costs post-confirmation in those cases.

[29] Although not persuaded that the Modified Plan should be construed in a manner at odds with Mont. LBR 2016-1(c), the Court is persuaded that the reference to "professional" in Mont. LBR 2016-1(a) and (c) does merit further consideration by the Local Rules Committee. This reference as drafted could be construed as requiring any professional that the debtor employs post-confirmation to apply for compensation. Such a construction would be at odds with this Court's limited jurisdiction post-confirmation and its view that its role in the case post-confirmation is limited.

[30] See Jonathan M. Seymour, *The Limited Lifespan of The Bankruptcy Estate: Managing Consumer and Small Business Reorganizations*, 37 Emory Bankr. Dev. J. 1 (2020) for a thorough analysis of the estate termination approach.

However, this Court is bound by its local rules which explicitly require court approval of fees for chapter 12 debtor's counsel without regard to when the fees were incurred, and payment of the fees through the plan. Accordingly, the Court determines that Debtors' Counsel shall submit further applications for fees and costs incurred prior to and after confirmation. A separate order will address the future applications.

Dated August 22, 2023.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana